IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LEROY POOLER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-098 |
| | ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Leroy Pooler, Jr., appeals the decision of the Acting Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration.

**I.    BACKGROUND**

Plaintiff applied for DIB in March of 2012, alleging a disability onset date of March 13, 2011.  Tr. ("R."), pp. 164-66.  Plaintiff's last insured date for purposes of the DIB application is December 31, 2016.  R. 164, 186.  Plaintiff was forty-two years old on his alleged disability onset date.  Plaintiff applied for benefits based on allegations of cardiomyopathy and high

cholesterol. R. 168. Plaintiff has a twelfth grade education, and, prior to his alleged disability, Plaintiff had accrued relevant work history as a sales manager in a furniture store. R. 168-69.

The Social Security Administration denied Plaintiff's applications initially, R. 82, and on reconsideration, R. 87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), R. 91, and the ALJ held a hearing on February 3, 2015. R. 32-55. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Roger S. Decker, a Vocational Expert ("VE"). Id. On May 8, 2015, the ALJ issued an unfavorable decision. R. 12-26.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 13, 2011, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*).

2. The claimant has the following severe impairments: sciatica, degenerative disc disease, cardiac problems, cardiomyopathy with ablation, and high blood pressure (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with exceptions.[1] The claimant would need [the] opportunity to alternate between sitting and standing up to once every 1/2 hour while continuing to work. He can stand and walk two hours out of eight hours. He can lift and carry a maximum of 10 pounds. There should be no use of foot controls. He can only occasionally climb, balance, kneel, stoop, crouch, and

---

[1]"Sedentary work" is defined as:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(b).

    crawl.  There should be no work on ladders, ropes, scaffolds, or at unprotected heights.  Thus, the claimant is capable of performing past relevant work (20 C.F.R. § 404.1565).

R. 13-21.

  When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review.  42 U.S.C. § 405(g).  Plaintiff then filed this civil action requesting reversal or remand of that adverse decision.  Plaintiff argues the ALJ erred in:  (1) failing to find Plaintiff's obesity was a severe impairment; (2) failing to address Plaintiff's obesity in developing his RFC; (3) giving the opinion of Dr. Kristen Hampton, Plaintiff's treating physician, little weight; and (4) finding Plaintiff not credible.  See doc. no. 8 ("Pl.'s Br.").  The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed.  See doc. no. 11 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

  Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to consider Plaintiff's obesity, a medically determinable impairment, in formulating Plaintiff's RFC; and (2) the ALJ erred in giving Dr. Kirsten Hampton, Plaintiff's treating physician, little weight. Pl.'s Br., pp. 11-15. The Commissioner argues in response:

4

(1) the ALJ was aware of the effects of Plaintiff's obesity when discussing Plaintiff's cardiovascular and musculoskeletal impairments and, furthermore, Plaintiff did not prove obesity-related limitations; and (2) the ALJ properly weighed the evidence of record. Comm'r's Br., pp. 4-9.

### A.      ALJ's Consideration of Plaintiff's Obesity

#### i.      Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

An ALJ must consider all of a claimant's impairments, severe and non-severe, in combination. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

### ii. The ALJ Erred in Failing to Consider Plaintiff's Obesity When Formulating the RFC.

As explained in Social Security Ruling ("SSR") 02-1p, obesity is no longer a listed impairment, but it is still a medically determinable impairment to be considered when evaluating disability. SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). SSR 02-1p also recognizes, "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body system." Id. at *3. An ALJ should assess the effect that obesity has on exertional and postural functions, as well as

6

"the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. at *6.

However, a mere diagnosis of obesity does not equate with a finding of disability. That is, disability hinges on the functional limitations attendant to diagnoses that would prevent an individual from working, not the mere existence of an impairment. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Lewis v. Comm'r Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012); Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005); 20 C.F.R. § 416.920(e)-(f). Rather, the record must contain evidence demonstrating that Plaintiff's obesity affected her ability to perform her past relevant work.

The National Institutes of Health Clinical Guidelines describe a Body Mass Index (BMI) above 30.0 as "obesity." SSR 02-1p, at *2. There is no question Plaintiff consistently maintained a BMI above 30 following his alleged onset date. R. 265, 267, 269, 290, 294, 296, 308, 316, 320, 426, 474, 485, 488, 493, 496, 500, 505, 509, 512, 533, 536, 538, 542, 547. Dr. Bilal R. Khan diagnosed Plaintiff with obesity on July 20, 2011. R. 270. Plaintiff's obesity or excess weight was noted several times in the record. R. 267, 290, 296, 316, 232, 512. Additionally, Plaintiff's physicians regularly assessed the need for weight-related preventive measures, including diet, exercise, and general "BMI Management." R. 268, 309, 534, 537, 540, 543, 550. Furthermore, Plaintiff, in his hearing brief, stated obesity was one of his "severe medically determinable impairments" and specifically requested the ALJ to consider Ruling 02-1p. R. 212, 215.

The ALJ recognized Plaintiff suffers from severe impairments related to cardiovascular and musculoskeletal body systems.  R. 17.  Furthermore, the ALJ found Plaintiff was limited in his ability to climb, balance, kneel, stoop, crouch, and crawl.  R. 18.  Cardiovascular and musculoskeletal impairments are precisely the types of impairments likely to be complicated and affected by obesity.  SSR 02-1p, at *2.  Similarly, the abilities noted as limited by the ALJ are the abilities likely to be limited further by obesity.  SSR 02-1p, at *6.  Additionally, Plaintiff complained of both fatigue and sleep apnea, R. 266, 208, 537, both of which may be attributed to obesity and affect a claimant's "physical and mental ability to sustain work activity."  SSR 02-1p, at *6.

However, in formulating Plaintiff's RFC at step four, the ALJ omitted any discussion of Plaintiff's obesity.  R. 18-25.  While the ALJ discusses Plaintiff's cardiovascular and musculoskeletal impairments in great detail, he only describes Plaintiff's height and weight on his application date and notes Dr. Khan's "assessment[]" of obesity.   R. 18, 20.  Thus, there is no indication that the ALJ considered the effect of Plaintiff's obesity in combination with his other medically determinable impairments in formulating Plaintiff's RFC.  Phillips, 357 F.3d at 1238; Heatly, 382 F. App'x at 825; Early v. Astrue, 481 F. Supp. 2d. 1233, 1239-40 (N.D. Ala. 2007) (finding ALJ erred by failing to consider claimant's obesity as factor in determining her RFC).

The Commissioner acknowledges Plaintiff's other impairments "presumably would have been impacted by obesity."  Comm'r's Br., p. 4.  The Commissioner argues the ALJ "was aware of and discussed medical evidence related to the effect of Plaintiff's obesity," but points only to the ALJ's discussion of Plaintiff's cardiovascular and musculoskeletal impairments.  Id.  The Commissioner also argues Plaintiff has not demonstrated his obesity

8

led to physical or mental limitations. Id. at 4-5. Determining whether a claimant's medically determinable impairment causes a limitation is the province of the ALJ. The ALJ was required to consider all of Plaintiff's impairments when determining his RFC, including his well-documented obesity, and explain his conclusions. R. 16; 20 CFR §§ 404.1520(e), 404.1545; SSR 96-8p, at *5; SSR 02-1p, at *7. This, the ALJ failed to do.

### B. The ALJ Erred in Giving Little Weight to Plaintiff's Treating Physician.

#### i. Assigning Weight to Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

### ii.     ALJ's Analysis

Dr. Hampton was Plaintiff's primary care physician and examined him at least ten times between March 21, 2011, and July 17, 2014. R. 294, 296, 308, 320, 533, 536, 538, 542, 545, 547. Dr. Hampton was also largely responsible for referring Plaintiff to his other treating physicians. R. 226, 368, 457, 497.

On July 17, 2014, Dr. Hampton examined Plaintiff and found his back was "diffusely tender to palpitation." R. 534. Furthermore, she assessed Plaintiff was suffering from cardiomyopathy, thrombocytopenia, low back pain, and "stress react, mixed dis[order]." Id.

Dr. Hampton stated Plaintiff would need "short term disability due to needing back pain surgery," but surgery would be need to be delayed due to Plaintiff's cardiomyopathy and low platelet count. Id.

On October 23, 2014, Dr. Hampton completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (MSS) and opined claimant could frequently lift up to ten pounds, occasionally carry up to ten pounds, sit and stand 45 minutes without interruption, walk one hour without interruption, and sit, stand, and walk for two hours each during an eight-hour work day. R. 356-57. Dr. Hampton also stated Plaintiff could never reach overhead or push and pull with either hand but could otherwise reach, handle, finger, and feel with both hands occasionally. R. 358. Additionally, Plaintiff could stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, and scaffolds but could occasionally balance. R. 359. Furthermore, Plaintiff could occasionally operate a motor vehicle a short distance but could not tolerate exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, or vibrations. R. 360.

After briefly discussing the MSS, the ALJ stated he "assigns little weight to Dr. Hampton's opinion because it is inconsistent with her own treatment notes." R. 24. The ALJ did not explain this assignment. R. 24. The ALJ also cited Plaintiff's statement to another physician that he no longer wanted the back surgery Dr. Hampton said he needed, which the ALJ described as "suggest[ing] his symptoms are no longer as bad as he had previously suggested." Id. The ALJ's determination that Dr. Hampton's MSS is inconsistent with her treatment notes is not supported by substantial evidence. The ALJ did not specify any inconsistencies, and Dr. Hampton's findings in the MSS are consistent with her July 17,

11

2014 examination of Plaintiff. R. 24, 534, 356-60. Dr. Hampton stated in her report of the July 17, 2014 examination that Plaintiff was in need of back surgery as soon as it was possible. R. 534. In the MSS conducted only three months later, she attributed several of Plaintiff's limitations to his back issues. R. 359. Additionally, Dr. Hampton cited Plaintiff's cardiac-related health issues in both the July 17, 2014 examination and the MSS. R. 534, 360. Thus, it appears Dr. Hampton's opinions stated in the MSS are consistent with her most recent treatment notes.

The ALJ also cited Plaintiff's decision that he no longer desired back surgery as a basis for assigning Dr. Hampton's opinion little weight. R. 24. This decision does not undermine the reliability of Dr. Hampton's opinions. First, Plaintiff's decision was noted in an examination report created by Dr. Laura Triano, who was treating Plaintiff's thrombocytopenia. R. 364-65. Dr. Triano was not responsible for treating Plaintiff's back problems and it is not apparent that Dr. Triano performed an examination of Plaintiff's back. Id. Second, Dr. Triano's report was created on August 16, 2013, almost a year before Dr. Hampton's July 17, 2014 examination. Id. Finally, at the February 3, 2015 hearing, Plaintiff explained he decided not to have back surgery because his doctors could not "actually guarantee that it would get rid of the pain." R. 41.

For these reasons, the ALJ failed to show good cause for refusing to give Dr. Hampton's opinions substantial weight. Accordingly, the ALJ committed reversible error in giving Dr. Hampton's opinions little weight. Crawford, 363 F.3d at 1159.

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability applications, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial

evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contentions. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

### IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 17th day of January, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA